UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIS RATCLIFF,<br>　　　Plaintiff<br><br>VERSUS<br><br>JONATHAN ROUNDTREE, et al.,<br>　　　Defendants | CIVIL ACTION<br>SECTION "P"<br>NO. 3:10-CV-00360<br><br>JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Willis Ratcliff ("Ratcliff") on May 24, 2010. The named defendants are Dr. Jonathan Roundtree ("Roundtree") (medical director at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana), Dr. Guy Thomas Williams ("Williams") and Dr. Heise ("Heise"), both medical doctors employed at the LSP. Ratcliff contends that, while he was incarcerated in the LSP in 2009 and 2010, defendants denied him adequate medical care for his intestinal problems and denied him a special diet and nutritional supplements (Doc. 1). For relief, Ratcliff asks for injunctions ordering he be taken to a stomach specialist for treatment, a special diet, liquid supplements (such as Boost or Ensure), a multi-vitamin, and to resume the liquid laxative regimen, and awards of monetary damages and attorney fees. Ratcliff is presently incarcerated in the LSP.

Defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. rule 12(b)(6) for failure to state a claim on which relief can be granted (Doc. 11),[1] to which Ratcliff filed an opposition (Doc. 14).[2]

### Ratcliff's Complaint

In 1998, Ratcliff suffered gunshot wounds to the abdomen; part of his small intestine and his gall bladder were removed (Doc. 1). Ratcliff contends he has fibrous scar tissue which interferes with his ability to pass food through his small intestine, and that, along with his inability to produce bile, results in occasional blockage in his small intestine. Ratcliff contends a blockage in his small intestine causes intense abdominal pain, headaches, vomiting, loss of appetite, fatigue, and dehydration, and sometimes creates the false impression of a heart attack (Doc. 1).

In April 2009, Dr. Williams prescribed magnesium citrate solution (an oral laxative) to Ratcliff for one year, to be taken

---

[1] The motion was actually filed only on behalf of Dr. Roundtree and Dr. Williams (Doc. 11) because Dr. Heise was not served until after the motion was filed (Doc. 16). Since defense counsel has enrolled for Dr. Heise, also, the court will sua sponte include Dr. Heise in the motion to dismiss since that appears to have been counsel's intent (see Doc. 26).

[2] Ratcliff attached an affidavit to his opposition to defendant's motion to dismiss. Since the court cannot consider extrinsic evidence in ruling on a motion to dismiss pursuant to Rule 12(b)(6), Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996), Ratcliff's affidavit will not be considered by the court at this time.

2

every three days (Doc. 1). Ratcliff contends that if he does not take a liquid laxative, he has a painful blockage in his intestine, but taking the laxative causes depletion of vitamins and minerals in his body (Doc. 1). Ratcliff contends he was only on a regular diet and was prescribed a multi-vitamin that it was inadequate to replenish his depleted nutrients, resulting in fatigue, weakness, hunger, weight loss over twenty pounds, a weakened immune system, dizziness, and blurred vision (Doc. 1). Ratcliff contends that, when the laxative was discontinued, he began having intestinal blockages (Doc. 1).

Ratcliff contends he was hospitalized in the R.E. Barrow treatment center at LSP from June 16-17, 2009 for an intestinal blockage that was treated by Dr. Heise. Ratcliff further contends he was rushed back to the treatment center again on June 18, 2009, and Dr. Heise prescribed a liquid laxative for seven days (Doc. 1).

In December 2009, Ratcliff alleges he was again rushed to the treatment center, and Dr. Roundtree told Ratcliff he was constipated, his blood pressure was high, his blood sugar was low, and he was dehydrated (Doc. 1). The next day, an unknown volunteer doctor told Ratcliff he needed to see a stomach specialist to determine whether his problems were caused by scar tissue which could be removed surgically (Doc. 1). Ratcliff contends the volunteer doctor scheduled Ratcliff for an appointment at the surgery center, but the appointment was cancelled when the

volunteer doctor left (Doc. 1).

In January 2010, Ratcliff contends he was in his cell having extreme abdominal pain, vomiting, dizziness, and heart-attack type symptoms (Doc. 1); the EMTs told him he was faking it and left (Doc. 1). Ratcliff then slit his wrists with a razor in order to get medical attention and was rushed back to the R.E. Barrow treatment center (Doc. 1). Ratcliff told the health center workers (and later the mental health workers) that he had slit his wrists in order to get medical attention for his abdominal pain (Doc. 1). X-rays showed Ratcliff had a lot of gas trapped in his intestines and was dehydrated; he was given a shot for pain and an IV to build up his fluids (Doc. 1).

Ratcliff contends he has a health dilemma which could be resolved with a special diet, additional nutritional supplements, and an appointment with a stomach specialist (Doc. 1).

## Law and Analysis

### Motion to Dismiss

For the purposes of a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C.Cir. 1985). A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d

198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Hirras v. National Railroad Passenger Corp.</u>, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994); <u>Doe</u>, 753 F.2d at 1102. On a motion to dismiss, it is presumed that general allegations embrace the specific facts that are necessary to support the claim. <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992).

1.

Ratcliff did not specify whether he is suing the defendants in their official capacities, their individual capacities, or both. The Eleventh Amendment to the U.S. Constitution bars all suits in law or equity against an unconsenting state, <u>Neuwirth v. Louisiana State Board of Dentistry</u>, 845 F.2d 553, 556 (5th Cir. 1988), and under La.R.S. 13:5106, the state of Louisiana has not waived her immunity under the Eleventh Amendment from suit in federal court. <u>Anderson v. Phelps</u>, 655 F.Supp. 560, 563-64 (M.D. La. 1985). See also, <u>Loya v. Texas Dept. of Corrections</u>, 878 F.2d 860 (5th Cir. 1989).

However, in <u>Ex Parte Young</u>, 209 U.S. 123, 28 S.Ct. 441 (1908),

the Supreme Court made an exception to the Eleventh Amendment. To meet te Ex Parte Young exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. Aguilar, 160 F.3d at 1054.

Therefore, to the extent that Ratcliff's action is for monetary damages from the defendants in their official capacities, it should be dismissed due to Eleventh Amendment immunity. Defendants do not have Eleventh Amendment immunity in their official capacities as to Ratcliff's claims for injunctive relief.

2.

Defendants argue that Ratcliff has not stated a claim against them for denial of medical care, in either their individual capacities or their official capacities for injunctive relief.

In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997), citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976). The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious

(1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a disagreement about medical treatment, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

In the case at bar, Ratcliff alleges the EMTs refused to treat him until he slit his wrists. However, the EMTs are not defendants in this law suit. Although Ratcliff also contends the EMTs refused to take him to the treatment center on order of Dr. Roundtree, Ratcliff concedes Dr. Roundtree also told the EMTs to give him a shot for his abdominal pain. Assuming Ratcliff's allegations are true for purposes of this motion, it is clear that Dr. Roundtree

true for purposes of this motion, it is clear that Dr. Roundtree did not deny Ratcliff treatment and that Ratcliff simply disagrees with the decision not to take him to the treatment center for his shot (see Doc. 14).

Ratcliff also contends the named defendants should send him to a "stomach specialist" and should prescribe him laxatives, multi-vitamins, and a special diet. This claim amounts to a disagreement as to the type of treatment Ratcliff is receiving. See <u>Hickman v. Moya</u>, 181 F.3d 97 (5th Cir. 1999). Inmates are entitled to reasonable medical care, not to the best medical care that money can buy. <u>Mayweather v. Foti</u>, 953 F.2d 91 (5th Cir. 1992). Since Ratcliff has not alleged or shown that the named defendants have denied him treatment, delayed treatment, or intentionally treated him incorrectly, and has not alleged or shown that defendants are otherwise deliberately indifferent to his serious medical needs, Ratcliff has not stated a claim for denial of medical care against the named defendants.

Therefore, defendants' motion to dismiss should be granted and Ratcliff's action against the defendants should be dismissed without prejudice.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion to dismiss be GRANTED and that Ratcliff's action against defendants be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 3 day of May, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE